*1834.*

HARRISON
*v.*
M'MENNOMY.

---

WILLIAM H. HARRISON, administrator *de bonis non, &c.* of ROBERT M. HARRISON, deceased, and MILLER, administrator of CHARLES HARRISON and SAMUEL H. LITTLEJOHN, deceased, *v.* MC. MENNOMY and others.

Parol evidence is admissible to prove a trust in opposition to an absolute deed or written instrument: but it must be evidence of so positive a character as to leave no doubt of the fact and, at the same time, so clearly define the trust that the court may see what is requisite for its due execution.

Money was left by H. with M. under a parol request to put it out at interest and let it accumulate until the youngest of certain children attained 21, when the same was to be divided amongst the survivors. M., fearing misfortunes in his business, executed his own bond and mortgage to these children. This transaction is not a mere loan of money, but a special deposit for investment and accumulation.

Money so deposited remains the property of H. and subject to her will; and as she afterwards bequeathed all her estate to the said children, with a reservation of the share of a party dying to such one's issue, and some of them died leaving children: *It was held,* that a bill of foreclosure and sale against M. could not be sustained by the personal representatives of the parents who had left issue.

An objection of substance by a defendant can be first raised upon a re-hearing, even though it may prove fatal to the whole bill.

*Feb. 12th, 1834.*

*Mortgage.*
*Trust.*
*Parties.*
*Rehearing.*

---

Bill of foreclosure and sale of mortgaged premises. It had been filed in the names of Isabella J. Harrison, widow

and administratrix of Robert M. Harrison, deceased, and Silvanus Miller, administrator as well of Charles Harrison as of Samuel H. Littlejohn, deceased. Isabella J. Harrison died during the pendency of the suit; and William H. Harrison, as administrator *de bonis non* of her husband, was made a party complainant.

The mortgage, with a bond, was executed by the defendant, Robert Mc. Mennomy, to Hannah Harrison, Charles Harrison, Robert M. Harrison, Elizabeth Harrison and Ann Evelina Harrison, who were children of Robert Mc. Mennomy's sister Margaret Harrison; and all infants, saving Hannah, at the time these securities were given. The bond was made in the penal sum of four thousand dollars, with a condition to pay to the obligees, Hannah Harrison, Charles Harrison, Robert M. Harrison, Elizabeth Harrison and Ann Evelina Harrison, " or either of them, their or either of their executors, administrators or assigns the sum of fifteen hundred dollars, with lawful interest for the same at or before the time when the youngest survivor of them should arrive at the age of twenty-one years."

Elizabeth married Samuel H. Littlejohn; and then died—leaving the husband and one child her surviving. Samuel H. Littlejohn afterwards died; but the child still lived. Robert departed this life after having married and had children. Charles died intestate, without issue.

Ann Evelina, the youngest of the mortgagees, came of age in the month of August one thousand eight hundred and twenty-five, and was now the wife of Benjamin S. Fowler—both being defendants.

The answer of the defendant Robert Mc. Mennomy, set up, as the consideration upon which the bond and mortgage were founded and as being the intent of the instuments, that the mother of these children while a widow and having a sum of money on hand, amounting to about eleven hundred and seventy-five dollars, delivered the same to this defendant to put out at interest, and, by a speculation in stocks, he increased the same to fifteen hundred dollars. That this money was left in his hands, with verbal directions to put it out at interest and let it accumulate until the youngest of her children should arrive at twenty-one years of age; and then

he was to divide the principal and interest monies equally among such of them as should be living—while the right of a deceased party was to die with him. That being a merchant largely engaged in business and becoming apprehensive the money might be lost by misfortunes in business, he, the defendant, directed a bond and mortgage to be made out for his own execution and so as to secure to the survivors of the children the principal and interest when the youngest came of age. He had executed the bond and mortgage without examining them particularly and presumed, when he did so, that they had been drawn according to directions, and which were given in exact conformity with the prior wishes of the mother. That when he executed the bond and mortgage, he thought they had been prepared so as to secure the payment of money to those of the obligees who should be living when the youngest of them attained the age of twenty-one years; and these documents, after execution, had been handed to Charles Harrison, upon the understanding of its being a family affair and so that the mortgage was not to be recorded until circumstances required it. That about the year one thousand eight hundred and thirteen, Charles Harrison passed them over to Hannah Harrison, who kept them until the month of November one thousand eight hundred and nineteen, when this defendant acknowledged the execution of the mortgage and caused it to be recorded. He was still under the impression of the condition being as before stated; and declared that the giving of the bond and mortgage proceeded from his own suggestion and was intended merely as a memorandum of such a condition.

In order to prove this condition the defendant produced several witnesses. All of them, however, except one, spoke from hearsay and did not testify from personal knowledge or authentic information. The one witness, whose testimony was not liable to the same objection, was Hannah Harrison. Although a party defendant in the suit, she had been examined after releasing all her interest in the bond and mortgage to the defendant Mc. Mennomy. Her testimony was as follows, that she was not present when the money was delivered to her uncle, the defendant, Robert Mc. Mennomy, and did not hear her mother's instructions to him as to the dispo-

*1834.*

HARRISON
*v.*
M'MENNOMY.

sition of it, but afterwards her mother instructed him, "to put out the money and from time to time to add the interest to the principal until the youngest child became of age, when it was to be divided amongst such of the children as should be then living, unless circumstances should occur of which her mother was not aware—and should those circumstances occur, then Mr. Mc. Mennomy was to dispose of the money in the same manner that he might suppose her mother would do if living." This had always been her impression from what she had heard her mother say. On cross-examination she qualified this, by stating she could not be certain as to the words used by her mother in relation to the disposition of the money, but the substance was, it should be appropriated for the benefit of her children when the youngest surving child came of age; and the witness's impression at the time was that the children of her mother were to be benefitted by the money; but whether the issue of any of them in case of death before the youngest of the children came to age were to benefitted she did not know, she had never thought of that nor given it any reflection.

The complainants produced in evidence the will of Margaret Harrison, wherein the defendant Robert Mc. Mennomy was nominated executor, although he had never proved it or taken out letters testamentary—nor did it appear he was aware of its existence until it was made an exhibit. The will bore a date shortly after the period when the money was placed in the hands of the defendant. By a general devising clause, she bequeathed to the five children before named all her estate of whatever description, share and share alike, with certain reservations and exceptions in favor of Hannah and the sons Charles and Robert; and the will directed that whatever could at the end of every year be saved from carrying on the business of selling books and of a printing office, after deducting the expences of the family, should be put out at interest, and, together with the interest arising out of her money already at interest, accumulate until the youngest survivor of her children were of age—and then followed, " should it so happen that any of my children die before my estate is to be divided as directed, their share is to go to their lawful issue ; but should there be none, his or her share shall be divided between my surviving children."

The cause had been brought to a hearing and a decree was made which declared the rights of the mortgagees and whereby the complainants, upon their representations, were adjudged entitled to three fifth parts of the principal and interest monies secured by the mortgage, and the defendants Hannah Harrison and Benjamin S. Fowler and Ann Evelina his wife, in her right, to two fifths; with a reference to take an account of the amount due on the mortgage and separate accounts as between the mortgagor Robert Mc. Mennomy and each of the mortgagees in respect to their separate shares.

The defendant, Mc. Mennomy, being dissatisfied with the decree, applied for and obtained a rehearing, which now came on.

Mr. *H. M. Western,* for the defendant.

Mr. *T. L. Ogden,* and Mr. *W. H. Harison,* for the complainants.

THE VICE-CHANCELLOR :—This cause has been reheard; and the defendants have insisted that the complainants can have no right to any share of the mortgage money and, therefore, the bill must be dismissed or if not so, still there must be other persons who have a right to a portion of the mortgage money made parties, before a proper decree can be had.

There might be no difficulty in deciding this cause, provided the court was bound to look no further than to the bond and mortgage. By these instruments, a debt was secured to the several persons therein named payable with interest at such time as the youngest of them had attained the age of twenty-one years. Thus, there were immediate vested interests in equal portions from the time the bond and mortgage were made ; and although payment was postponed and in the event of the death of one or more of them, the right of action at law devolved upon the survivors, yet the respective shares were transmissible and assignable before the time of payment arrived. Upon these principles and viewing the bond and mortgage aside from other matters, there would now be all proper parties before the court to authorize an ordinary decree for foreclosure and sale.

*1834.*

HARRISON
*v.*
M'MENNOMY.

*October 6th.*

But a very different construction and effect are sought to be given to the bond and mortgage, by the answer of the defendant Mc. Mennomy; and if the facts bear out this construction, then an end is undoubtedly put to the present bill. The hearsay testimony offered by this defendant is incompetent to alter or affect, in the smallest degree, the import of the written instruments; and the evidence of Hannah Harrison, as to the precise extent of the trust in relation to the money placed in the defendant's hands by her mother, still leaves the point in doubt. Indeed, it is apparent, throughout her testimony (and it could hardly be otherwise) that instead of clear and distinct facts resting on her mind, she has only given the vague impressions and opinions entertained by her; and she admits she has been much perplexed with the opinions of others in regard to the question whether the defendant is pursuing the intention of her mother in saying the money should be divided between the witness and Ann Evelina, the only two who were living when the latter arrived at age. Upon testimony so vague and uncertain, it is unsafe to decree a trust of the particular description set up in the answer. Parol evidence is admissible to prove a trust in opposition to an absolute deed or written instrument: but it must be evidence of so positive a character as to leave no doubt of the fact and, at the same time, so clearly define the trust as that the court may see what is requisite for its due execution. There can be no doubt a trust was created for the benefit of the children upon placing the money in the hands of the defendant: for it was not a loan of money to be repaid by him as borrower, but the same was a special deposit for the purposes of investment and accumulation— the fund not being distributable until the youngest attained the age of twenty-one years. The number of parts into which the fund was then to be divided is left uncertain by the parol evidence.

The trust restricting the distribution of the fund to the survivors is not made out; and the act of the defendant, Mc. Mennomy, in executing a bond and mortgage payable in the manner already mentioned, is evidence to the contrary. In order more clearly to show the trust was not as is asserted by the defendant, the complainants have produced in evidence

the will of Margaret Harrison; and it has been made one of the points on the part of the complainants, that even admitting the money to have been confided to him by the tes- tatrix, with the instructions which he alleges, still her subsequent will must alter and control the disposition of it. I think this correct. The money in the hands of the defendant was still the money of the testatrix and subject to her disposition by will. It was competent for her to declare the trusts, fix the time when the distribution should be made, and designate the persons or classes of persons to take. And all this she has done by her will. The money secured by the bond and mortgage is the same which she disposes of and gives over by her will; and although this bond and mortgage purport to secure the payment of the principal and interest to the five children absolutely as a debt owing to them, yet the security must be held to enure for the benefit of those entitled under the will. Robert having died before the time appointed for the division of the fund, his interest therein ceased and the right to his share devolved upon his children and did not go to his personal representative. So, upon the death of Charles, his interest ceased and was not transmissible to his personal representative and, leaving no issue, it merged in the shares of the survivors. Again, with respect to the interest of Mrs. Littlejohn. This vested in her child at her death and not in her husband; and, consequently, his personal representative is not entitled to receive it.

The objection arising from the production of the will in evidence to the right of the administrators of Robert, Charles and the husband of Mrs. Littlejohn to file this bill was not taken upon the original hearing of the cause, but is now—upon the rehearing—urged: and it appears to be insurmountable. If we take the bond and mortgage in connection with the will, (and which is produced by the complainants for the purpose of controuling the disposition of the money) it will at once be seen that the present complainants can have no interest in the money and no right, in their representative capacities, to file the bill. In case any portion of the money, to arise from the sale of the mortgaged premises, should be permitted to go into their hands, they would receive it as assets to be applied in a due course of administration. The court can-

1834.

HARRISON

*v.*

M'MENNOMY.

not make a decree for a sale of the mortgaged premises and, at the same time, stop the money from going into the hands of the complainants. This would amount to an acknowledgment of their right to sue and yet be a withholding of all benefit by it.

Nor do I see how the present complainants can be regarded in the light of trustees suing for the benefit of the parties entitled under the will. The defendant, Robert Mc. Mennomy, is the trustee of the fund; and the bond and mortgage may be considered a security for the performance of the trust. No doubt the persons actually entitled, as *cestuis que trust,* may come into this court and call him to an account and claim the benefit of the security. They may have rights to an account beyond what may be secured by the terms of the bond and mortgage. And hence the propriety of their being before the court as parties complainants, instead of the persons who have filed the bill.

I feel constrained to say the complainants have, by the production of the will, debarred themselves from a standing in this court.

It has been urged that this objection comes too late—that it should have been taken at an earlier stage of the suit. Not so. The defendant was at liberty to take the objection at any time after the foundation for it was laid; and, indeed, it could only openly appear upon the hearing. Besides, it is not a mere formal objection which could be obviated by an amendment, but one of substance, going against the entire right of the complainants to sue, from their having no interest in the matters in controversy.

The decree heretofore made must be reversed and the bill dismissed.

As there were *prima facie* claims of right in the persons represented by the present complainants and on account of their having prosecuted the suit in good faith, I shall leave the respective parties to bear their own costs.