# Wheeling.

TROLL *et al. v.* CARTER *et al.*

Decided November 1, 1879.

1. Parol evidence can not be admitted to vary or add to a deed, as a general rule.

2. But if a grantee in a deed has procured it by fraud, he will be held by a court of equity to be a trustee of the real owner, or if land purchased with the funds of one party is conveyed to another, the grantee will be held a trustee for the real purchaser, or if the scrivener of a deed has made a mistake in drafting it, a court of equity will correct such mistake, or a deed absolute on its face may be shown by parol evidence to be a mortgage to secure a loan or a precedent debt. These however ought to be regarded not properly as exceptions to the general rule, but as cases to which this rule has no proper application.

3. If a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and this general rule, to permit parol evidence to establish such a trust.

4. But if a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for third parties, such a trust so proven will be enforced in a court of equity, as to permit a party to hold the land so obtained for his own use would be to permit the grantee to commit a fraud.

5. If a party obtains a deed for a valuable consideration, but agrees by parol with the grantor, at the time the deed is made, that he will hold the land in trust for third parties, whether a court of equity will enforce such a parol trust is questionable, and the decision of this point in this case is waived.

6. *Quære*—Does the omission in our statute-law of the 7th section of the English statute of frauds have any effect?

7. Whenever the courts permit parol evidence to be received to establish a trust, they always require such evidence to be clear and unquestionable, to produce such result.

8. And they will never enforce such a parol trust, where a great lapse of time has intervened since the absolute deed was executed, and where the grantee has during such time acted as the absolute owner of the property, unless the laches of those claiming to be *cestuis que trust* is satisfactorily explained.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 25th day of July, 1864, in a cause in said court then pending, wherein Emma G. Troll and others were plaintiffs and Emma B. Carter and others were defendants, allowed upon the petition of said plaintiffs.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

This is a controversy about the equitable ownership of a farm in Ohio county, of about one hundred and eight acres, known as the Carrol farm. The undisputed facts are, that this farm was conveyed on December 27, 1830, to Edward G. Steenrod, the father of the female complainants, in exchange for other land, a portion at least of which belonged to his father. Edward G. Steenrod was a dissipated and improvident man ; and on the 20th of March, 1832, he conveyed, with general warranty of title, this farm to his father Daniel Steenrod, the consideration stated on the face of the deed as paid therefor being $3,000.00. About the same time and as a part of the same transaction he made a bill of sale to his father of a negro woman and two children, the consideration named in the bill of sale being $400.00. After this conveyance Edward G. Steenrod continued to get coal for sale out of a coal bank on this land as he had previously done, for about four months, when he died, leaving a widow, Eliza J., and four small children. The oldest of

them, Mary Ann, died under age and unmarried. Daniel was born in 1828; Sarah E., who married Hiram Pennington, was born about 1830; and the youngest, Emma G., who married Conrad Troll, was born in March, 1832.

After the death of E. G. Steenrod, his father, Daniel Steenrod, took the rents and profits of this farm for thirty-two years, when he died in April, 1864, and by his will, made November, 1862, he devised this farm to his daughter, Emma B. Carter. The widow of E. G. Steenrod, on July 25, 1864, conveyed her dower interest in this farm to her three surviving children above mentioned; and they and the husbands of the females brought a suit in chancery in the circuit court of Ohio county, claiming that they had an equitable title to the whole of this farm and that the conveyance and bill of sale made by their father in 1852 to their grandfather, though absolute on their face, and stated on their face to be for a valuable consideration, were nevertheless made on the express agreement that their grandfather should hold this property, real and personal, in trust for their father for life, and after his death in trust for them and their deceased sister, whose share they inherited. That their grandfather had promised this farm to them and had for more than twenty years frequently and uniformally declared to every one who approached him on the subject, that he held the said farm in trust for them, and he never set up any claim to it to their knowledge till 1862, when he wrote his will devising it to his daughter, Emma B. Carter. That after this conveyance of this land, for the four months that he lived, their father held this land pursuant to the agreement whereby their grandfather held this land in trust for him for life and after his death in trust for his children; and after his death for ten years their grandfather gave their mother, for the use of her family, such sums of money as might have been a reasonable rent for this farm. That he had taken the rents and profits of this land for thirty-two years without accounting there-

for, and had neglected to convey or devise their land to them. And they ask an account of the rents and profits and a conveyance of the land; and pray for general relief.

The defendants to this suit were the personal representative of Daniel Steenrod and his heirs and the devisee of this farm, Emma B. Carter. There was when this suit was instituted a controversy going on about this will of Daniel Steenrod, which accounts for his heirs and personal represe-resentatives being made defendants to this suit. But the will having been established the suit was dismissed, as against the heirs and personal representative, and retained only against the devisee of this farm Emma B. Carter. And as this will devised another farm to Daniel Steenrod, one of the children of Edward G. Steenrod, and it was deemed that he had elected to take under this will and could not claim an interest in this Carrol farm in opposition to the will, the plaintiffs by the leave of the court struck him out of the bill as a plaintiff and made him a defendant.

Emma B. Carter in her answer insists that this farm and negroes were conveyed to her father for a valuable consideration as stated on the face of the deed and bill of sale; that the grantor in the deed was permitted to enjoy the farm for this brief time, four months, from the parental affection of Daniel Steenrod to a wayward and prodigal son, and not under claims of right. She denies that he admitted to every or to any one that he held the land in trust for the children of the grantor in this deed, on the contrary he claimed it as his own and took to his own use the rents and profits for some thirty-two years to his death, and then devised it to her. She relies on the statute of limitations, the statute of frauds and perjuries, and on lapse of time, to bar the plaintiffs' claim. Numerous depositions were taken by both sides.

If we omit for the present the evidence of the mother of the female plaintiffs, the evidence may be thus summed up on the disputed points:

First. There is no evidence, other than this witness, which contradicts, either directly or indirectly, the statement contained on the face of the deed and bill of sale, that they were made for a valuable consideration; on the contrary the evidence makes these statements on the face of the deed and bill of sale natural and confirms their truth. It is proven that Edward G. Steenrod, the grantor, was an intemperate and extravagant man who had at no time any means except what he got from his father, the grantee, who frequently paid debts for him and aided in the support of his family; and that this deed and bill of sale was made to prevent him from squandering all he had, and when they were so made, he was largely indebted to his father for moneys paid for him and supplies furnished his family.

Second. No agreement at the time this deed and bill of sale were made is proven, whereby Daniel Steenrod agreed to hold this property in trust for Edward G. Steenrod for life, and after his death in trust for his children. But, as tending to establish there was no such understanding, it is proven that Edward G. Steenrod had his father's permission to get coal from the coal-bed on this farm for sale, as he had done before, but his father paid the hands for digging this coal; and after his death, which was only four months after the conveyance, for about thirty-two years the grantee, Daniel Steenrod, used this land as if it was his own. He built a house upon it, improved and repaired other buildings, and rented it out, and took the rents and profits himself for this long time. That in thus managing this farm he is not shown to have ever consulted or advised with the family of the grantor, who claim that they were the acknowledged equitable owners of this land; nor did he ever render any account of the rents and profits of this land, nor was he, so far as the evidence shows, ever called on to render such an account. It is true, as stated in the bill, for some years after the death of Edward G. Steenrod his father did pay money and render assistance to his widow, and thus aided

the family as he had done in the lifetime of E. G. Steenrod; and though he insisted that one of his tenants should pay his rent in money, as he wanted it for these children, yet this was clearly not intended as an acknowledgment of any right in them, but only proved his disposition to aid them with his own means. The only occasion on which he, the grantee, ever in any manner consulted the family of the grantor in the management of this farm, so far as the evidence shows, was when he was building a house on it, he asked his grandson, Daniel, how he liked the house, saying he thought a porch would improve it. His grandson, Daniel, said: "No, grandfather, I think a portico would look better." The grandfather then asked if he would pay for the portico. The grandson said, no, he had not the means. It seems after this conversation the portico was built, and paid for by a colt, which belonged to the grandson and which had been given him by the grandfather. This consultation about the portico is fully accounted for by the fact, that is proven in the case, that the grandfather at one time expected to devise at his death this farm to this grandson. That this intended devise was not based on any idea that the children of Edward G. Steenrod had a claim to this land is obvious, as he spoke frequently of devising or intending it for one of them, this grandson only, and it is proven that he regarded it as a mere bounty, as he said frequently to his grandson : " Daniel, if you want this farm, you must be a good boy to me."

Third. The evidence shows satisfactorily that for some time after the death of his son, Edward G., his father, Daniel Steenrod, contemplated devising this land to the children of his deceased son, but after the daughters grew up and were married, he seems to have changed his mind, and then contemplated devising this farm to his grandson, Daniel, one of the children of Edward G. Steenrod, his son, and finally he again changed his mind and actually devised this land to his daughter, Emma B. Carter, devising another farm to his grandson Daniel. The al-

1879
Special Term.

Troll et al.
v.
Carter et al.

lusions made by Daniel Steenrod in various conversations with different witnesses shows these changes in his mind on this subject, and the statements of some of the plaintiffs' witnesses, which standing alone might possibly be con- strued as an acknowledgement of some right of the plain- tiffs to this farm, can in view of these facts be otherwise in- interpreted, especially when we consider that their depo- sitions were taken many years after the conversations they detail, and the language used may well have been forgotten. The only evidence, other than the widow of Edward G. Steenrod, which can not be readily reconciled with the claim of ownership of this farm by Daniel Steenrod, and his intention to devise it to the children or one of the chil- dren of his deceased son, Edward G., is the evidence of Thomas Hogg. He says, he asked Daniel Steenrod if he would sell him the coal privilege and rights, and he told him he could not, and said it belonged to the heirs. But on cross-examination he says, he does not recollect wheth- er he said "Edward's heirs or not," that he does not rec- ollect what heirs it was; and he says that "the very words he used were that he wished it to lay there as it was, and rent it, that he did not wish to sell it. He used no other words that I can recollect at this time." This conversa- tion took place probably more than twenty years before the testimony of this witness was taken. And when we consider that this witness states, that he rented a part of this property of Daniel Steenrod, and paid him the rent for some twenty-six years, we could not infer an acknowledge- ment by him of an ownership of this property by these children, even if such inference was not utterly inconsis- tent with the rest of the testimony, other than that of their mother. The truth is the testimony goes further than proving that Daniel Steenrod claimed this property as his own, and shows that Daniel Steenrod, the only son of Edward G. Steenrod, always so regarded it, and set up no claim to it except from the expected bounty of his grandfather, as it is proven, that directly after the death of his grandfather he stated that he had devised it to

him, and undertook to rent a part of it out as such de-
visee.  He did not then, as he does now, claim that it
belonged to him and his sisters in their own right.  All he
then claimed in it was from the supposed bounty of his
grandfather.

This is substantially the case as shown by the evidence,
other than that of the widow of Edward G. Steenrod and
the mother of the female plaintiffs.  Her evidence can-
not be well reconciled with the other evidence in the
case.  But it is unsatisfactory in its character, and she
has doubtless fallen into errors in detailing transactions
some thirty years after their occurrence.  She does not
profess to have been present when the deed or bill of
sale was made by her husband to his father.  But she
says her husband was a dissipated man, and fearing he
would waste everything, she got his father to get him to
make the deed for this land to him, and he would hold
it for the children, and the family could have the place
and use it.  She says no consideration for this land was
asked, and none offered.  Daniel Steenrod took the deed
for the sole purpose of saving the property to the chil-
dren ; and after her husband's death he said that the land
would be saved for the children ; that he intended it for
them.  He always said he would do as well for her chil-
dren as though his son Edward was living.  Some thir-
teen years before her deposition was taken, she had her
last conversation with Daniel Steenrod on the subject.
He said he had told her son, Daniel, he might get mar-
ried and go on the place, if he wanted it.  He said Daniel
had better buy the girls out, and they ought not to charge
him too much.  Daniel Steenrod's deposition was taken
in this cause ; but he says in it not one word in confir-
mation of his mother's statements.  She says she does
not know on what consideration the bill of sale of the
negro women and children was made.  She says she
knows nothing about this ; and if anything was paid for
the negro women and children, it went into the coal
banks her husband worked.  Yet the bill states that this

deed of the land and bill of sale of the negro women and children were part of the same transaction, as their dates and time of recordation would seem to indicate, and that both of them were without any consideration and upon the same identical trusts. It is strange that if this were so, one should be so well remembered and the other so entirely forgotten by Mrs. Steenrod. It shows how little reliance can be placed on her memory after a lapse of more than thirty years.

The cause was finally heard on August 15, 1878; and the circuit court decreed that the bill be dismissed, and that the defendant recover her costs. From this decree Emma G. Troll, and her husband Conrad Troll, and Sarah E. Swaney formerly Sarah E. Pennington and her present husband, O. J. Swaney, obtained an appeal and *supersedeas.*

*Daniel Peck,* for appellants, cited the following authorities:

5 Rand. 211; 5 Leigh 63; 1 Johns. Ch. 582; 2 Johns. Ch. 505; 1 Wend. 625; 4 Johns. Ch. 167; 2 Ves. Sen. 375; 4 Ves. 627; 15 Gratt. 487; 14 Gratt. 66; 10 Gratt. 305; 12 Ohio St. 505; 16 Ohio 66; 10 Gratt. 193; 10 Leigh 307; 4 Munf. 332; *Id.* 222; 29 Gratt. 756; *Id.* 27; 29 Gratt. 760; 14 Gratt. 441.

*R. G. Barr,* for appellees, cited the following authorities:

7 W. Va. 289; 9 W. Va. 636; 1 Johns. Ch. 425; 13 Mass. 443; 3 Desau. (S. C.) 149; 23 Gratt. 589; 13 Gratt. 705; 18 Gratt. 106; 2 Am. Rep. 147; Perry on Trusts §379; 26 Gratt. 392; 4 Bibb 102; Brown Stat. Frauds §79 *et seq*; 9 Pet. 405; 18 Wall. 509; 4 Otto 811; 8 W. Va. 442; 1 Rob. 161; 6 Gratt. 405; 20 Gratt. 553; Perry on Trusts §229; 29 Gratt 762; 17 Wall. 78; 3 Lom. 8; 10 Ves. 51; 22 Gratt. 589; 26 Gratt. 392; 22 Gratt. 373; 23 Gratt. 588; 10 Ves. 211, 6 Wend. 277; 3 Sumn. 437; 2 Johns. Ch. 405; 29 Gratt. 31; Story Eq.

Pl. §719; 1 Dan. Ch. Pr. 302; 2 Leigh 401; 3 Edw. 48; 2 Ala. 406.

*William Erskine,* for appellees, cited the following authorities:

13 Gratt. 705; 18 Gratt. 184; 26 Gratt. 384; 7 W. Va. 289; 2 Wh. & Tud. Lead. Cas. Pt. 1, p. 980; Perry on Trusts §77; 22 Gratt. 589; 4 Otto 806; 20 Gratt. 553; 2 Story Eq. §1520 a.; Story Eq. Juris. §§1076, 1077; Story Eq. Pl. §719; 1 Dan. Ch. Pr. 302 *et seq.*

GREEN, PRESIDENT, delivered the opinion of the Court:

The questions presented by the record in this case are, first—whether the plaintiff can prove by parol evidence that the deed made by Edward G. Steenrod to his father Daniel Steenrod, which on its face was an absolute conveyance for a valuable consideration of the Carrol farm, was in reality by a verbal agreement to be regarded as a deed conveying this land in trust for the use of the grantor for life and remainder in fee simple to his children; and whether if such verbal trust is satisfactorily proven it would be enforced; and secondly—if such parol evidence can be received for such a purpose, what must be its character in point of strength and clearness to justify a court in enforcing a trust of this sort, if it would be justified in any case in so doing.

It is a general rule of evidence, that parol testimony cannot be admitted to vary or add to a written contract, and especially a contract or deed conveying lands. See *Towner* v. *Lucas, ex'r,* 13 Gratt. 705; *Broughton* v. *Coffer,* 18 Gratt. 184; *Spindle et al.* v. *Hayworth et al.,* 18 Gratt. 392; *Hurst* v. *Hurst,* 7 W. Va. 298; *Stevens* v. *Cooper,* 1 Johns. Ch. 425; *Flint* v. *Shelden,* 13 Mass. 343; *Holmes* v. *Simmons,* 3 Desau (S. C.) 149; *Little Kanawha Navigation Company* v. *Rice,* 9 W. Va. 636. There are some cases which are sometimes called exceptions to this general rule, but which are really not exceptions, they being cases to which the rule is not properly applicable. Thus a

*Syllabus 1.*

*Syllabus 2.*

party, who is apparently the absolute owner of a tract of land by a deed so conveying it to him, may be held by a court of equity a trustee of the land for the use of others, when it is shown that in taking the deed for the trust in his own name he committed a fraud on such others. This fraud may be proven by parol, yet this parol evidence cannot be regarded as admitted to vary, explain or contradict the deed, but simply to charge the conscience of the grantee, and to enforce him to perform a trust which the facts so proven show was binding on him in equity and conscience. So too, where land has been purchased with the funds of A., and the deed taken in the name of B., a court of equity holds that B. shall be regarded as a trustee for the use of A., and the fact that the land was purchased with the funds of A. may be proven by parol, but such cannot be regarded to vary or add to the deed, but as establishing a state of facts independent of the deed, which facts so proven affect the conscience of the grantee and in the view of a court of equity make him a trustee for A. whose funds have been so invested in the purchase of the land. So too, if the scrivener has made a mistake in drawing the deed, such a mistake may be corrected by parol evidence. Such evidence is admitted not to vary the contract, but simply to enable the court to enforce the real contract of the parties, which by accident or mistake has not been written down as the parties agreed it should be written. So too a deed absolute on its face may be shown by parol evidence to have been given as security for a loan, or as security for the payment of an antecedent debt. The real office of the parol evidence in such a case is not to vary the contract in writing, but to establish the existence of a collateral fact, which when established controls the deed. Many authorities have been cited by the appellant's counsel to sustain these positions, which I regard as so elementary as not to require the citation of authorities to sustain them. So too, if a party obtained a deed or a devise without any consideration, upon a parol assurance by the

73

grantee or devisee that he will make a particular disposition of it, a court of equity will enforce the specific performance of such an agreement, even though the deed recites that it was made for a valuable consideration, if in point of fact no consideration was really paid by the grantee. See *Onson* v. *Cown*, 22 Wis. 329; *Miller* v. *Pearce*, 6 Watts & S. 97; *Hoge* v. *Hoge*, 1 Watts 163; *Thompson et ux.* v. *White*, 1 Dall. 447; *Kennedy's heirs and ex'rs* v. *Kennedy's heirs*, 2 Ala. 571. In such case the deed or will is not added to or altered by the parol evidence; but this evidence fastens on the individual who has got the title without consideration the personal obligation of fulfilling his agreement whereby he procured the title, as without its enforcement by a court of equity the grantee or devisee would be allowed to avail himself of a fraud in so obtaining the deed or devise. But if the land be conveyed by a deed of bargain

and sale for a merely nominal consideration, the courts of equity would not receive parol evidence to prove that the grantee agreed to hold the land for the grantor's use, as the deed in such a case must have been made for the express purpose of divesting the grantor of his title and vesting the same in the grantee. Such parol evidence, if admitted, would defeat the very purposes for which the deed was made and must be regarded as contradicting the deed, and the general rule we have laid down requires in such a case its rejection. *Philbrook* v. *Delano*, 29 Me. 410; *Rathburn* v. *Rathburn*, 6 Barb. 98; *Graves* v. *Graves*, 9 Foster (29 N. H.) 129; *Blodgett* v. *Hildreth*, 103 Mass. 484.

In the case of *Porter* v. *Hayfield*, 9 Harris (21 Pa. St. 2¼4, the Court say: " There are cases wherein trusts may be proved by oral testimony; but not in violation of the rule that protects written agreements against such testimony. As a deed of conveyance is intended to define the relations between the parties to it, it is not contradicted when it is shown that the vendee purchased in trust for a third person; for such evidence only estab-

lishes a new and consistent relation. But evidence, that at the time of the conveyance the vendee agreed to hold the title in trust for the vendor, is a flat contradiction of the written instrument executed by the parties as the bond and evidence of their relation, and would make it void from its very inception. Oral testimony can have no such power. As between vendor and vendee such testimony can not be heard to change a title absolute on its face into a trust."

It was however held in *Lingelfelter* v. *Ritchey,* 8 P. F. Smith (58 Pa. St.) 448, that parol evidence might be received to establish a trust in favor of the grantor. But the decided weight of authority as well as reason sustains the position, that "parol evidence that at the time of the conveyance the vendee agreed to hold the title in trust for the vendor" is not admissible. See *Leeman* v. *Whitley* 4 Russ. 423 (5 Eng. Cond. Ch. Cases 746); *Hagan* v. *Jaques et al.,* 4 C. E. Green 123; *Squire* v. *Horder,* 1 Paige 494; *Farmington* v. *Barr et al.,* 36 N. H. 86. But the correctness of the other position taken by the court in *Porter* v. *Hayfield,* 9 Harris (21 Pa. St.) 264; that "as a deed of conveyance is intended to define the relations between the parties to it, it is not contradicted when it is shown that the vendee purchased in trust for a third person; for such evidence establishes a new and consistent relation," is by no means so obvious.

The 7th section of the English statute of frauds 29 Car. II, ch. 3, enacts that all declarations and creations of trust or confidences in any lands, tenements or hereditaments, "shall be manifested and proved by some writing signed by the party who is by law to declare such trust, or by his last will in writing," This section, or a section very similar thereto, has been enacted in many States, as in Alabama, Arkansas, California, Georgia, Illinois, Iowa, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, New York, Rhode Island, South Carolina, Vermont and Wisconsin; and though this section had not been

1879
Special Term.

Troll *et al.*
v.
Carter *et al.*

Syllabus 3.

Syllabus .

enacted in Pennsylvania when the case of *Porter* v. *Hay-field*, 21 Pa. St. 264, was decided, yet shortly thereafter, in 1856, it was substantially enacted there. This seventh section would seem obviously directly opposed to the views in this Pennsylvania case on which we are now commenting. In some States however there has been a failure to re-enact this 7th section. So far as I am at present informed, it has not been re-enacted in Connecticut, Delaware, Kentucky, Indiana, North Carolina, Ohio, Tennessee, Texas, Virginia, and West Virginia.

It has been a question whether uses at common law could be raised by parol. The conclusion reached by Lord Chief Justice Baron Gilbert shows probably the correct views on this point. His conclusion is that a use might be raised at common law by parol upon any conveyance which operated by way of transmutation of possession as a feoffment; since the estate itself might by the common law pass by a parol feoffment; and therefore by the same reason a use of the estate might be declared by parol. But where a deed was requisite for the passing of the estate itself, then the declaration of a use could not be by parol. See 2 Story Eq. Juris. §971. If this be correct, the omission of the 7th section of the English statute of frauds in some of the States is immaterial, as by the common law a declaration of trust in any lands "must be manifested or proved by some writing signed by the party who is by law to declare such trust," when the conveyance of the land itself can not be verbal, as it now never can be. But nevertheless in some of the States, where the 7th section of the English statute of frauds has not been enacted, it has been held that trusts in land can be proven by parol. See *Dunham* v. *Chatham*, 21 Texas 231; *Bailey* v. *Harris*, 19 Texas 110; *Hall* v. *Taylor*, 16 Texas 278; *Foy* v. *Foy*, 2 Hayw. 131 (N. C. R. by Battle 296); *Biggs* v. *Swann*, 6 Jones Eq. 118; *Shelton* v. *Shelton*, 5 Jones Eq. 292; *Haywood et al.* v. *Ensley & Haywood*, 8 Humph. 466. But the decisions of the courts in States where the 7th sections

of the English statute of frauds has not been re-en-
acted have not been uniform.   Thus it is held in Ken-
tucky, where the 7th section of the English statute of
frauds has not been re-enacted, that a parol declaration
of a trust in land can not be set up.   See *Childs* v. *Wood-
son*, 2 Bibb 72; *Parker' heir's* v. *Bodley*, 4 Bibb 102.

1879
Special Term.
Tioll *et al.*
v.
Carter *et al.*

In the case of the *Bank of the United States* v. *Carring-
ton et al*, 7 Leigh 566, the Court of Appeals of Virginia
comment on the omission of the 7th section of the En-
glish statute of frauds from our statutes, and they appear
to attach some importance to the omission.   But as the
Court say the case before them was a resulting trust,
and even had this 7th section been in our statute, upon
the English authorities their decision would have been
the same as it was, and what was said by the judges in
that case about this 7th section and its effect was confess-
edly *obiter dicta*.   The same remarks may be applied to
the case of *Walraven* v. *Lock et al.* 2 Patton & H. 547.

In the case of *Sprindle et al.* v. *Hayworth et al.*, 26
Gratt. 392, Judge Moncure, in delivering the opinion of
the court, after holding that a certain parol declaration
of a trust was inadmissible says : " We do not mean to
admit, however, that there is any difference in effect be-
tween the English statutes of frauds and ours arising
from the omission in the latter of the 7th and 8th sec-
tions of the former."

In *Hardman* v. *Orr et ux.*, 5 W. Va. 71, the father
of a natural daughter purchased land and a had it
conveyed to a natural son, with the agreement on his
part that at a future time it would be conveyed to the
natural daughter of the purchaser.   It was held that this
trust could be proven by parol and would be enforced
against the grantee.   It will be observed that so far as
the grantee was concerned the conveyance was voluntary,
he having furnished no part of the purchase-money ;
and according to the views heretofore expressed a parol
trust would be enforced against him ; for to permit him
to retain the land, when he had paid nothing for it and

had obtained the deed by a promise to convey the land to another, would be to permit him to avail himself of his fraud.   In such a case his conscience is affected ; and a court of equity properly regards him as a trustee. This, we have seen, would be the case alike in States where the 7th section of the English statute of frauds had been re-enacted and in States where it had not. Strong reasons may be assigned, independent of this 7th section of the statute of frauds, why as a general rule parol evidence ought not to be received to establish a trust in lands.

This question is considered in the notes to White & Tudor's Leading Cases in the notes on *Dyer* v. *Dyer*, see vol. 1 Pt. 1, p. 354; and the conclusion reached is : "That a grant cannot be affected with an oral trust for a third person merely on the ground of contract, nor unless the evidence goes far enough to establish fraud." This conclusion is supported by highly respectable authority ; but, as we have seen, there is perhaps equally respectable authority which would lead to a contrary conclusion.   In this case it is unnecessary to decide whether it is law or not ; as in the view I take of this case it may be decided on a point on which the authorities are all agreed, that if the statute of frauds in any case be inapplicable, and a trust of land be permitted to be established by parol evidence, to establish such a trust the evidence must be full, clear and satisfactory.   *Phelps* v. *Seeley*, 22 Gratt. 589 ; *Snavely* v. *Piekle*, 29 Gratt. 31 ; *Bank of the United States* v. *Carrington*, 1 Leigh 576; *Currey* v. *Dupree*, 21 Texas 211 ; *Boyd* v. *McLean et ux.*, 1 Johns., Ch. 562 ; *Gascoigne* v. *Thwing*, 1 Vern. 366; *Fowler* v. *Fowler*, 4 De. G. & J. 265 ; *Tesson* v. *The Atlantic Mutual Insurance Co.*, 40. Mo. 33, 36 ; *Kilpin* v. *Kilpin*, 1 Myl. & K. 520 ; *Harrison* v. *McMennomy*, 2 Edw. Ch. 251 ; *Slocum et ux.* v. *Marchall et al.*, 1 Wash. C. C. 398. So too all the authorities agree that an equitable claim of any sort, and especially one which depends on parol testimony only, will not be recognized after great lapse

of time, during which time it has been ignored, where no satisfactory reason can be assigned for not setting up the claim sooner. And that this is more especially true when the equitable claim is of a character which required clear and explicit evidence to sustain it; such lapse of time itself rendering the evidence, which might otherwise have been regarded as sufficiently clear and explicit, unsatisfactory. See *Benjamin* v. *Clarke*, 20 Gratt. 544; *Phelps* v. *Seeley*, 22 Gratt. 589; *Clarke* v. *Boorman's ex'r*, 18 Wall. 509; *Sullivan* v. *R. R. Co.*, 4 Otto 811; *Western Mining and Manufacturing Co* v. *Peytona Cannel Coal Co.* 8 W. Va. 442; *Marquis Cholmondelley* v. *Lord Clin-. ton*, 2 J. & W. 138, 156; *Beckford et al.* v. *Wade*, 17 Ves. 88; *Decouche et al.* v. *Savetier et al.*, 3 Johns. Ch. 190; *Prevost* v. *Grantz*, 6 Wheat. 481; *Hughes* v. *Edward*, 9 Wheat. 483; *Piatt* v. *Vatier et al.*, 9 Pet. 416.

There is but little difficulty in applying the principles of law I have laid down to the facts in this case. It is neither alleged nor proven that Daniel Steenrod, the grantee, in the deed of March 20, 1832, *fraudulently* procured this deed to be made to himself and not to the plaintiffs, or that the Carroll farm was purchased and paid for by the plaintiffs. or that this deed was executed to secure a loan or precedent debt due the grantor. In the argument of this case it has been to some extent treated, as if the object of the suit was to correct a mistake made by the scrivener of this deed, and to make it conform to what the parties to the deed designed to have inserted in it. I do not understand this to have been the object of the suit; in the bill there is no allegation that the writer of this deed had made a mistake in drawing it, and no proof that any mistake was made in drawing it.

The allegation of the bill is that some time prior to the execution of this deed it was agreed that Edward G. Steenrod should convey to his father this farm absolutely, as I understand the bill, and it being so conveyed to him, he should hold the same for the grantor for his life, and

*[margin: 1879 Special Term. Troll et al. v. Carter et al. Syllabus 8.]*

after his death for the use of his children, and that a negro woman and her children were to be conveyed in the same manner, and when so conveyed were to be held by the grantee on the like trusts; for more than twenty years the grantee admitted that he held this property on these trusts and then he made his will and disposed of this land as his own. The bill also states that this deed and bill of sale were both voluntary deeds on the part of the grantor, no consideration being paid by the grantee for said property.

The authorities we have cited show that, if this suit had been instituted in a reasonable time after the making of this deed and bill of sale, and it had been clearly and distinctly proven that the grantee paid no consideration for this land, and that he expressly agreed to hold the same for the use of the grantor for life and the remainder in fee for the use of the grantor's children, the court would not enforce this trust in favor of the grantor, but would enforce it in favor of the third parties, the children of the grantor. But the evidence of such parol trust, even had the suit been instituted promptly, must have been clear and explicit. Is this case thus proven by clear and explicit evidence? This deed on its face states that the consideration paid by the grantee for this Carroll farm was $3,000.00. It was signed by the grantor, E. G. Steenrod; and it amounts to a solemn admission made by him at the time that he had received of his father, the grantee, full value for this Carroll farm. The only evidence introduced to show the contrary is the evidence of the widow of the grantor. This deed when it was drawn was evidently drawn to be signed by her and her husband, as her name is inserted in the body of the deed and two seals attached to it, opposite to one of which is her husband's name. But she never executed this deed; and from this and her own statement it is obvious she was not present when it was executed. Her deposition was not taken for some thirty-two years afterwards. She says: " Not a dime in the way of consideration was paid

to him" for this land. And when asked, she says she knows this, " because none was asked and none offered. He did it for the sole purpose of saving the land for his children." As she was not present when this deed was executed, she could only have learned that no consideration was paid from what she heard, it may be from both parties. We will assume she did so learn it, and that in point of fact the $3,000.00, the consideration named in the deed, or any part thereof, was not paid by the father to the son at the time the deed was executed. But does it follow from this that the deed was a voluntary deed made without consideration? If the son was then indebted to his father in that or a larger amount, may not his indebtedness have been the consideration? And in the face of the fact that this sum is recited to be the consideration ought we not to assume that this indebtedness was the consideration?

Now the evidence shows that the grantor in this deed was a thriftless man, and his father, the grantee, largely aided in the support of him and his family, and that this very farm was paid for in part, when it was deeded to the son, by two lots in Wheeling which had belonged to to the father. The son then was indebted to the father for aid furnished to him, unless this assistance was understood by the parties to be gratuitous. There is no evidence it was so understood. Is it unreasonble to suppose that it was not so understood, when the parties state on the face of the deed that the conveyance made by by the son to the father was a valuable consideration? Is it not rather reasonable to suppose that it was understood that the son was indebted to the father the full value of this land, and that this was the real consideration for this deed? Then the recital in the deed, that the consideration of the deed was $3,000.00, is consistent with the statement that no cash was paid by the father to the son for this farm.

I have given to the widow's testimony more weight than it is reasonably entitled to, and have considered her

1879
Special Term.

Troll et al.
v.
Carter et al.

statement, as though she had been present when the deed was executed, and had said that no money was then paid to her husband. But it seems to me it is not entitled to so much weight. She is speaking of transactions occurring thirty-two years before, in which time we may well suppose they had faded from her memory. In speaking of the bill of sale of the negroes ánd two children, which occurred about the same time, and which from the bill we may fairly infer really constitute a part of the same transaction, and about which she originally knew just as much, in all probability, as about the sale of land, she appears now to be very ignorant. This bill of sale, the bill says, was also voluntary; and these negroes too, like the land, were to be held for the use of the grantor for life, remainder for his children. Yet she says she does not know what consideration was paid by the father for these negroes, and that if any thing was paid for them it went into the coal banks; nor does she prove the alleged trust, so far as the negroes are concerned. I think therefore that there is a failure to prove clearly and satisfactorily that this deed of March 20, 1832, was made without any consideration. It ought not to be so regarded on this evidence given thirty-two years after the transaction, and in face of the fact that the deed recites that it was in consideration of $3,000.00.

It may be said however, that it is not absolutely necessary for the plaintiffs to prove that this deed was not made for a valuable consideration, and that though it was made for a valuable consideration, still if it can be shown distinctly that it was made on an express agreement between the grantor and grantee that the land should be held for the use of the grantor for life, remainder in fee for his children, this trust could, though proven by parol, be enforced in favor of the children, though not in favor of the grantor. We have seen there are authorities to sustain this position; but, as I have before shown, it is controverted by authorities equally respectable. I have considered it unnecessary in this case to decide which of

these authorities should be followed, because in my judgment the evidence fails to establish clearly and explicitly that there was such a distinct agreement between the grantor and grantee ; and even if it had been much more clearly established that there was such an agreement, the lapse of time and conduct of the parties would in this case forbid the enforcement of such a parol trust, could it have been otherwise enforced. There is no witness who testifies to any such agreement. No witness is examined who was present when the deed was made, or when any agreement of any sort was made between the grantor or grantee, or who testifies to any conversation between them. The widow, it is true, testifies thirty-two years after the occurrence that she had often talked to her husband's father about securing this farm for her children, and that he thought it best to have it deeded to him, and he could hold it for the children, and that the family could have the use of it, and shortly after such a conversation the deed was made. But if he paid a full consideration for the land, as the deed states he did, it would hardly be contended that this promise made to the wife, to hold it for her children, would be enforced by a court of equity. The utmost extent to which any court has ever gone has been, that in such a case, if there was proven clearly to be an explicit contract between the grantor and grantee that it should be held for the use of third persons, such a trust would be enforced. It is very questionable whether even then it ought to be enforced.

But surely this evidence fails to establish clearly that there was any such distinct contract between the grantor and grantee. An effort was made to strengthen it by proof of loose conversations held long afterwards by the grantee with other parties. The substance of this evidence is set forth in the statement of the case which precedes this opinion. It is exceedingly unsatisfactory in its character, and taken altogether tends rather to prove that there was no agreement between the grantor and the grantee that the property should be held by the grantee

for the use of the children of the grantor, but that he claimed to hold it as his own property, and that at one time he intended to devise it to the grantor's children generally ; that he afterwards changed his mind and intended to devise it to the son of the grantor, excluding all his other children, and finally concluded to devise it to a third party. And when this evidence is taken in connection with the fact that the grantee held this land for more than thirty years, that he leased it to third parties for long terms of years, collected the rents and never accounted for them and was never called upon to account for them, that he put improvements on the property, and in all respects acted during this long period of time as though he was the absolute owner of this farm, the conclusion seems irresistable that it would be contrary to all precedent to enforce a parol trust after such a lapse of time, unexplained, and when the evidence to sustain it was so slight and unsatisfactory.

The circuit judge who decided this case files with the papers this note : "The evidence relied upon by the complainants is scarcely sufficient, in my judgment, to warrant the court in holding in favor of their equitable claim and against the letter of the deed which they assail. The evidence to produce that result should be clear and unquestionable, not consisting of vague declarations of the grantor, testified by witnesses who can not in the nature of things give the exact language and all the circumstances under which it was used, and which comport with an intention to make a particular disposition by devise rather than with a holding in trust for the benefit of given parties. I think the testimony here is too vague and indefinite, including that of Mrs. Steenrod, to warrant a decree for complainants. *Phelps* v. *Seeley*, 22 Gratt. 573. But however this may be, the lapse of time is a bar to the remedy sought. Considering the character of the evidence adduced, and the inability resulting from the death of the original parties and other witnesses to get at the true inwardness of the original transactions, and the

consequent danger of injustice, I am constrained to hold that the claims of the complainants should not in this proceeding be enforced. *Benjamin* v. *Clarke*, 20 Gratt. 553."

In these views I concur; and for the reasons I have assigned the decree of the circuit court of August 10, 1878, dismissing the bill of the complainants at their costs must be affirmed; and the appellees must recover of the appellants their costs in this Court expended and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.