# CHARLESTON.

Poling v. Williams *et als.*

Submitted January 28, 1904.   Decided February 16, 1904.

| 55 | 69 |
| f64 | 20 |
| 64 | 22 |
| 65 | 686 |
| 55 | 69 |
| 66 | 498 |

1. FRAUDULENT CONVEYANCE.

Where a conveyance has been made with intent to hinder, delay and defraud creditors of the grantor, all the estate of the grantor, subject to the rights of creditors, passes by the deed to the grantee, and equity will not, at the suit of the grantor or any person claiming under him, as purchaser from him after such conveyance, set the deed aside. (p. 71).

2. FRAUDULENT CONVEYANCE.

No interest or estate in land so conveyed remains in the fraudulent grantor for his benefit, which can form the basis of such a contract of sale by him, as will create an equity respecting the land. (p. 71).

3. FRAUDULENT CONVEYANCE.

A purchaser from the grantee in such deed is not prejudiced by prior notice of a pretended contract of sale of the land so conveyed, made between such fraudulent grantor and a third person. (p. 72.)

4. FRAUDULENT CONVEYANCE.

A voluntary or fraudulent conveyance is binding upon the parties thereto. (p. 72).

5. FRAUDULENT CONVEYANCE.

Equity will not aid any person in an effort to profit by his own fraudulent act. (p. 72).

6. FRAUDULENT CONVEYANCE.

One who conveys land to another voluntarily and without consideration cannot set up a parol trust in the land in his favor, unless the circumstances be such as to ·bring the case within the rule stated in point 3 of the syllabus in *Troll v. Carter*, 15 W. Va. 567. (p. 73.)

7. FRAUDULENT CONVEYANCE.

One who claims such a trust vests no equity affecting the land by his contract for the sale of it to another. (p. 73).

8. PURCHASING PARTIES.

Where two persons are attempting to purchase the same property, neither is bound by any notice of the acts of the other, until an enforcible contract is made with one of them. (p. 74).

9. FRAUDULENT CONVEYANCE—*Bill.*

When a bill in equity sets up a claim that is unenforceable, and the evidence offered in ·support does not prove a good cause of action, and the relief asked has been decreed by the court below, the appellate court will, on appeal, reverse the decree and dismiss the bill, although no demurrer was interposed in the lower court. (p. 74).

Appeal from Circuit Court, Randolph County.

Bill by U. S. Poling against R. P. Williams and others. Decree for plaintiff, and defendants appeal.

*Reversed, and bill dismissed.*

HARDING & HARDING and LINN, BYRNE & CATO, for appellants.

L. HANSFORD, for appellee.

POFFENBARGER, PRESIDENT:

U. S. Poling sues to enforce the specific performance of a contract of sale of a tract of land containing forty acres, situated in Randolph County, made between him and R. P. Williams, on the 18th day of February, 1901, whereby Williams agreed to sell the plaintiff said land; and also to set aside a deed made by the said R. P. Williams, April 4, 1900, convey-

ing the same land to his brother, E. L. Williams, "for the purpose of evading the payment of some small debts due from" the defendant R. P. Williams "to various persons," according to the allegations of the bill; and also to set aside another deed, made by said E. L. Williams, April 12, 1901, conveying the same land to H. E. Stout, wife of W. F. Stout; and also to enjoin and restrain the defendants from cutting and removing the timber from the land and otherwise interferring with complainants possession of the land. After a full hearing on the bill, exhibits, answers, general replications and depositions, the court, by its final decree, perpetuated the injunction awarded at the commencement of the suit, cancelled the deed from E. L. Williams to Mrs. Stout, ordered R. P. Williams and E. L. Williams to execute a deed, conveying the land to Poling, upon his payment of the balance of the purchase money, and appointed a special commissioner to make said conveyance on their failure to do so within thirty days from the date of payment of said balance. From this decree, H. E. Stout, W. F. Stout and E. L. Williams have appealed.

By his contract of purchase, U. S. Poling could acquire only such right, title and interest in the land as R. P. Williams then had. That Williams then had no interest in it is manifest. He had conveyed the legal title to his brother. He could claim nothing under or against that deed for two reasons. First: It was made with intent to defraud his creditors, and equity will not relieve a party from the consequence of his fraudulent act nor aid him in an effort to profit by it. *McClintock* v. *Loisseau,* 31 W. Va. 865; *Billingsley* v. *Menear,* 44 W. Va. 651; *Edgell* v. *Smith,* 50 W. Va. 349. "This rule applies not only to the original parties to the fraudulent transaction but also to their heirs and to all parties claiming under, or by title derived from, them, where no equitable rights intervene to protect such parties." *McClintock* v. *Loisseau,* cited. Second: If the deed was not made to defraud the creditors of the grantor, he cannot set up an interest in the land by way of parol trust, and convey, or contract to convey, that to a third party. The statute of frauds and the rule against the admission of parol evidence to contradict, vary or add to, written contracts, make it impossible to create such an equitable title. *Troll* v. *Carter* 15 W. Va. 567. It is not claimed here in any form that E. L.

Williams procured the deed by any fraud perpetrated upon R. P. Williams, the grantor; nor that the latter owed the former a debt for which the land was conveyed as security; nor that the land was conveyed to the former by a third person in consideration of money paid, or furnished, by the latter. The case is not within any of the exceptions to the rule, noted in point 2 of the syllabus of *Troll* v. *Carter.* The grantor here claims the grantee was to hold the land upon a secret parol trust for him, the grantor, in direct contradiction of the terms of the deed, and has sold that alleged equitable title to Poling. It is for that Poling sues, and it is a nonenity. The case, in this aspect of it, falls exactly within the principle announced in point 3 of the syllabus of *Troll* v. *Carter.*

But it is urged that Mrs. Stout had notice of Poling's contract with R. P. Williams. That is wholly immaterial. He clearly had nothing under that contract of which anybody could take notice. It was like waste paper. It conferred no right, title, or interest of any kind in the land. Parties are presumed to know the law, and, in view of this principle, Mrs. Stout knew Poling had acquired nothing by his contract, for R. P. Williams had nothing to sell him.

As stated in the bill, therefore, the case is wholly without any equity. It does not aver any purchase from, or contract of purchase with, E. L. Williams, nor that R. P. Williams was the agent of E. L. Williams and made the alleged contract with Poling as such agent and on behalf of said E. L. Williams. Although not demurred to, the bill cannot support a decree, as it sets out an alleged bad claim, unenforceable in any court, and not a good cause of action insufficiently stated. It should have been dismissed at the hearing, unless the case made by the evidence showed that the bill could be made good by amendment and sustained by proof.

Nor is it proved that R. P. Williams, as agent of E. L. Williams, has made a contract of sale to Poling. The evidence of both Poling and R. P. Williams conforms to the allegations of the bill. Poling says he bought the land of R. P. Wiliams and his wife, and the written contract reads as follows:

"Parsons, W. Va., Feb. 18th, 1901. I, this day, sell to U. S. Poling 40 acres of land I now own on Salt Lick in Randolph County, W. Va., for the sum of $95.00. I hereby receive as a

part of said consideration $13.33 which sum is to be deducted from the total consideration of $95.00, and I further agree to make or cause to be made to the said Poling a deed properly acknowledged and stamped ready for recordation. R. P. Williams, Amanda J. Williams." ·

He immediately showed it to W. F. Stout and does not say he told him that he had had any communication whatever with E. L. Williams or that R. P. Williams was acting for E. L. Williams. Under this contract he says he immediately went upon the land and did some clearing and put out fruit trees. R. P. Williams testifies that he was the owner of the land, sold it to Poling, and sent his brother a deed to execute, which the latter returned unexecuted, but told him to sell the land, and later wrote witness another letter saying he had better not make a deed, but hold it awhile. One of the letters is in the record, and says, under date of March 20, 1901: "Lony I cannot get away from the children to acknowledge the deed, I don't think it necessary anyhow, I will just say in this letter I give you all claims I have on the land, if you sell it do so you and I can settle afterwards. I send you the deed I have no claim on it now." It does not appear that either Poling or Stout ever saw this letter, if it can be treated as a power of attorney, or evidence of agency. Poling did nothing on the faith of this letter, for it is dated a month after the alleged contract was made, under which he says he immediately took possession, and he does not say he ever saw it or had any communication with E. L. Williams. It gives no authority to represent E. L. Williams as agent. He disclaims any interest in the land, and uses no word or phrase which binds him to do anything. It is not a communication to Poling, nor an adoption of, or agreement to carry out, the contract made by R. P. Williams.

Mrs. Stout was not bound or estopped by notice of anything short of a contract between E. L. Williams and Poling. She was bound by notice of any interest he had acquired in the land, but nothing short of an enforceable contract with E. L. Williams, made in person or by agent, amounted to such interest. Notice of mere negotiations pending is not sufficient, if it can be said that any were pending. The principle invoked is that if a subsequent purchaser has notice of a contract, relating to the property, he is liable to

the same equity, and stands in the same place, and is bound to do the same acts, which the person who contracted and whom he represents would be bound to do. 1 Story's Eq. Jur. s. 296; Fry Spec. Per. s. 135, p. 113; *Bryant* v. *Booze,* 55 Ga. 438; *Taylor* v. *Sibbert,* 2 Ves. Jr. 437; *Poller* v. *Sanders,* 6 Hare 1; Wade on Notice, s. 55.

E. L. Williams was inactive, passive, suffering his brother to do as he pleased with the land, and did no act, binding upon himself, until he executed the deed to Mrs. Stout, and then all the purchase money was received by R. P. Williams. There never was any promise or agreement on the part of either Poling or Mrs. Stout to pay any money to E. L. Williams, nor any agreement by him to convey to either of them. Hence, Poling had no interest of which Mrs. Stout could take notice, nor any contract with E. L. Williams enforceable in this suit, so far as appears from either his bill or his evidence. Therefore, he was not entitled to any decree on his bad bill, and it appears that an amendment would be useless.

For these reasons, the decree complained of is reversed, the injunction dissolved and the bill dismissed.

*Reversed and bill dismissed.*