## HIRAM SMITH *et al.*

*v.*

## GEORGE M. HOLLENBACK *et al.*

CHANCERY—*complainant must have an interest in the subject matter of the controversy.* Unless a complainant has some interest in the property in controversy, his bill cannot be maintained.

WRIT OF ERROR to the Court of Common Pleas of the city of Aurora, Kendall county.

This was a suit in chancery, instituted by the plaintiffs in error, against the defendants in error, in the Circuit Court of Kendall county, and by consent, the venue was changed to the Court of Common Pleas of the city of Aurora. The case

was heard at the March term A. D., 1866, of that court. The injunction was dissolved, and the bill dismissed at the cost of the complainants.     They bring the case to this court by writ of error.

From the voluminous record in the case, the following appears to be the substance of the facts.

About the year 1845, one John Miller purchased a farm in Bristol, Kendall county, a portion of which, viz: sixty acres of prairie and about nine acres of timber, he bought of one George W. Bradley, and the balance, consisting of about the same amount of prairie and timber, he bought of one Stephen B. Craw.

In 1847, John Miller, being indebted to his son, James Miller, in the sum of about $1,700, for work done, and for money loaned to him by James, on the first day of November, of that year, executed to James a warranty deed of all his farm; and at the same time being indebted to his son Abraham to the amount of about $800 for work, he executed to Abraham a chattel mortgage of all his personal property, being of a considerable amount, which deed of the farm was accepted by James in satisfaction of his debt, and the chattel mortgage accepted by Abraham in satisfaction of his debt.     James and Abraham were both present when the deed to James of the farm was executed, and Abraham was present when the same was delivered to James.     James was also present when the chattel mortgage was given to Abraham.     Immediately after the execution of the deed and chattel mortgage, James took the deed and Abraham the chattel mortgage, to the Recorder's office of Kendall county, and had the same recorded, James and Abraham going to the Recorder's office together, for such purpose.

It was claimed that at the time of the execution of the deed and chattel mortgage, some eastern parties held a claim against John Miller, and afterwards a suit was commenced on the same in the Circuit Court of Kendall county against him.     Shortly

after the commencement of that suit, one S. W. Randall, a lawyer, then living in said county, and originally one of the solicitors for the complainants in this case, induced John Miller, at a time when neither James nor Abraham was present, under pretense that the eastern creditor would set aside the deed and chattel mortgage, to go to Grundy county and have a summons served on him, and allow judgments to be obtained in favor of James and Abraham, respectively, for the same services which were the consideration of the deed and chattel mortgage, Randall purporting to act as counsel for James and Abraham, and one Fellows as counsel for John Miller. Judgments were obtained in Grundy county against John Miller for the same indebtedness which formed the consideration of the deed and chattel mortgage, respectively. It was alleged that these judgments were obtained to prevent the collection of whatever judgment might be recovered against John Miller in the Kendall Circuit Court, in favor of the eastern creditors. Subsequently, a certificate of levy on the farm of John Miller, (the premises included in the deed to James) was filed in the Kendall county Circuit Clerk's office, by James S. Cornell, which recited the levy to be made by virtue of an execution issued on a judgment in favor of James and Abraham against John Miller. A sale was had thereon of the whole of the premises, and the same was bid off by Randall in the name of James and Abraham Miller, but by what authority from James, does not appear. Subsequently, a sheriff's deed was made by Cornell to James and Abraham, under said sale. The sheriff's deed was recorded in the Recorder's office of Kendall county.

It does not appear from the record that there was even a levy and sale on executions issued on the two judgments in favor of James and Abraham, respectively, nor on any execution issued on either of said judgments; but the levy and sale purported to be made upon an execution issued on a joint judgment, and the sheriff's deed is in accordance therewith

There was no joint judgment in existence. It is alleged in the bill of complainant, that after the execution of the sheriff's deed, there was a parol division of the farm between James and Abraham into equal parts, Abraham taking the part described in the bill; and that he afterwards, in the fall of 1852, contracted to sell the same to one Russell Robinson, and the proof shows that he did contract the same to Robinson, but that said contract was rescinded, and Robinson never got or claimed any title thereto. However, on the 27th or 28th of March, 1853, Abraham having died on the 10th of the same month, the defendant, George M. Hollenback, through William P. Boyd, purchased from James the whole farm included in the deed from his father, John Miller, to him, and received deeds therefor, which deeds were recorded on the 28th of March, 1853. Immediately after the execution of said deed, Hollenback took possession of the premises described in the deed, no one being at that time, or at the time of the execution of the deed, in the visible possession of that portion of said premises which is described in the bill of complaint, and James occupying the other portion of the premises until a few days after, when he removed to Iowa. On the 25th of April, 1853, Hollenback conveyed to William Boyd the premises described in the deed from James to himself, and Boyd continued to occupy the premises from that time to his death, in January, 1860, paying the taxes thereon. After his death, Boyd's executors continued in the possession of the whole premises, paying the taxes, until about the 14th of May, 1861, when the complainants forcibly took possession of that portion of the premises claimed by them in their bill. An action of forcible entry and detainer was then brought against complainants by Milliard Johnson, the tenant of Boyd's executors, in the possession of the premises at the time of such forcible entry; and thereupon complainants filed their bill of complaint in this case to restrain said action, and to have the deed from James to Hollenback set aside; the complainant, Getty

Jane Smith, claiming as the widow and devisee of Abraham Miller, that she has an equitable title to that portion of the John Miller farm which is described in the bill of complaint, under and by virtue of said Sheriff's deed, and a parol divi- sion of the land by James and Abraham, and that the deed from James to Hollenback was obtained by Boyd in fraud of her said rights; she also claiming title to the said premises under a quitclaim deed from said Robinson, it being claimed in the bill of complaint that a deed was executed by James, Abraham, and Getty Jane Miller, on the 17th of February, 1853, to said Robin- son, of said premises. Such deed, however, if ever executed by James and Abraham, was never delivered to Robinson or ac- cepted by him, and he did not know of its existence. It was produced after Abraham's death, and after James had moved to Iowa, by complainant Getty Jane, and one James B. Lowry, to whom she had promised to give half the farm if he would enable her to get the farm from Boyd, and was, on or about April 26th, 1853, put on record by Lowry, without the knowl- edge of Robinson, and Robinson did not know of the existence of such deed until it was shown to him a long time afterwards, when his deposition was taken in this case, when he repre- sented the same. April 26th, 1853, Lowry obtained a quit- claim deed to Getty Jane from Robinson, of said premises, Robinson then not claiming any title or interest in the land, having long before given up his contract, and gave the deed, according to his testimony, to accommodate Lowry, and to get rid of him, stating to Lowry that he had no title to the land, and Lowry stating it would make no difference, as it was a quitclaim deed; which deed was obtained by Lowry to enable Getty Jane to defeat the title of Boyd to the land. Boyd died in January, 1860, and James Miller died about 1857. No attempt was made during the lifetime of Boyd or James Miller to disturb the title of Boyd to the land, or to in- terfere with his possession.

Mr. JOHN C. CHAMPLIN, Mr. O. C. GRAY and Mr. JOHN H. FELCH, for the plaintiffs in error.

Mr. CHARLES WHEATON, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

In the opinion of a majority of the court, the complainant, Getty Jane Smith, had no interest in the land in controversy that would entitle her to maintain this bill. The legal title, unquestionably, passed by the deed from James Miller to Boyd, and whether this land was included in the deed through mistake or design, is a question which can arise only between the parties to that conveyance, or persons claiming under them. Even had the legal title remained in James Miller, this complainant could not have maintained a bill against him for its divestiture. Had James and Abraham Miller been tenants in common, doubtless their acts would have been sufficient evidence of a parol partition. But they were not. Abraham took nothing under the sale on the judgment and execution against John Miller, because the latter had previously conveyed the premises to James Miller. Getty Jane took nothing by the will of her husband, Abraham Miller, because he had nothing to devise. She took nothing by the deed from Robinson, because the deed to him from James and Abraham Miller had never been delivered, and he had no title to convey. She had no equitable interest arising from the payment of money by herself or her husband, as there is no proof that any money was ever paid. She had, in short, only a naked possession, and she must be left to defend that in the courts of law. The decree of the Circuit Court is affirmed.

*Decree affirmed.*