Central Cotton Garment Manufacturers Association, Appellee, v. International Ladies' Garment Workers Union et al., Appellants.

Gen. No. 38,164.

Heard in the second division of this court for the first district. Preliminary injunctional order entered February 23, 1935, Opinion filed April 26, 1935.

SISSMAN & SISSMAN, of Chicago, for appellants; PETER SISSMAN, of counsel.

WILHARTZ, HIRSCH & SCHANFARBER and PAUL R. SIMON, all of Chicago, for appellee; JULIAN H. LEVI, EUGENE H. NIRDLINGER and STANLEY G. SCHOENBROD, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Complainant filed its bill for an injunction against defendants and upon its motion the chancellor entered a preliminary injunction. After a motion to vacate the order had been made and denied, defendants prosecuted this interlocutory appeal.

The bill alleges that complainant is an Illinois corporation "not for profit";

"2. That plaintiff corporation has as members many manufacturers of cotton garments who do business in the City of Chicago, State of Illinois, and who formed said corporation to further, encourage, aid and promote the general welfare of its members; that said corporation has included in its membership, among others, the following firms, doing business in the City of Chicago, whose respective addresses are listed opposite their names *and for whose relief the injunction herein prayed for is asked:*

| NAMES | ADDRESSES |
|---|---|
| Korach Bros., a co-partnership | 913 W. Van Buren St. |
| Boris Smoler & Sons, Inc., a corporation | 3021 N. Crawford |

| | |
|---|---|
| H. A. Satin & Co., Inc., a corporation | 311 N. DesPlaines St. |
| Lee Garment Company (Not Incorporated) | 618 S. Kilbourne |
| Lawndale Garment Company (Not Incorporated) | 231 S. Green St. |
| Mel-Tex, Incorporated, a corporation | 500 S. Throop St. |
| B. Sopkin Company, a corporation | 3900 Michigan Ave. |
| B. Sopkin Company, a corporation | 4321 Wentworth Ave. |
| B. Sopkin Company, a corporation | 4601 Wentworth Ave. |
| B. Sopkin Company, a corporation | 5218 Wentworth Ave. |
| R. & M. Kaufman, Incorporated, a corp. | 300 W. Adams St. |
| Nelly Ann Dress Co., a corporation | 3910 S. Michigan Ave. |
| Charles H. Sobel & Co., Inc., a corp. | 1647 N. Winchester Ave. |
| Louis Sopkin | 4237 Indiana Ave. |

"3. That each of the members of plaintiff corporation has a plant, consisting of machinery and equipment, and occupies buildings especially designed, equipped and arranged for the manufacture of cotton garments, and unsuited to the manufacturing of any other product, and that each of said Members has invested in its respective business large sums of money, ranging in the approximate amount of several hundreds of thousands of dollars; that the assets of each of said Members includes, among other items, its plant, machinery, tools, patterns, equipment, leasehold, accounts receivable, inventory of raw materials, goods in process, completed products, and good will, and that the amounts of each item in each plant of said

Members vary generally in proportion to the amount of invested capital."

The bill further alleges that the total amount invested in the businesses of the said 14 members exceeds $2,000,000, and that the total volume of business transacted by them annually exceeds $7,000,000. The bill then alleges, in great detail, how "each of said members" will be injured "if said members are unable to continue to manufacture and do business in a normal way." It further alleges:

"16. That International Ladies' Garment Workers Union is a voluntary association of persons; that Cotton Goods Workers Union, Local No. 76, is a voluntary association of persons; that plaintiff is informed and believes, and upon such information and belief, charges the facts to be that Morris Bialis, Samuel Glassman and Abraham Plotkin, on or about, and prior to the 18th day of February, 1935, individually, and as organizers, agents and leaders of said International Ladies' Garment Workers Union and of said Cotton Goods Workers Union, Local No. 76, and the unknown officers and members of each of said Unions, and certain other persons designated as 'Unknown Defendants' (who plaintiff charges upon information and belief are some of the members of said Unions, together with the officers, and members of said alleged Unions, together with other persons, pickets, and agitators whose names are at the present time unknown to plaintiff . . .), well knowing the conditions existing in the businesses of the Members of plaintiff, as hereinabove set forth, and among the employees of said Members respectively, and of the fact that said Members have complied fully with all of the terms, provisions and conditions of the National Industrial Recovery Act, and of the Code of Fair Competition for the Cotton Garment Industry, did with said named defendants and named Unions unlawfully, wickedly and malicious-

ly *enter into an unlawful, wicked and malicious conspiracy with the following intent, purpose and. design:*

"(a) To destroy the business of each of the Members of the plaintiff, respectively; ·

"(b) To compel, intimidate and force by violence, picketing, threats, and other means, the employees of said Members, respectively, to cease working for said Members;

"(c) To prevent, by violence, picketing, threats and other means, the employees of said Members, respectively, from returning to their respective employments, and to prevent others, able, ready and willing to work for said Members from being employed so to do.;

"(d) To prevent said Members, respectively, by the means aforesaid, and by other means, from operating their businesses, and to force the same to be shut down;

"(e) To cause said Members irreparable loss, damage, injury and expense in connection with the contracts hereinabove described, made by them, for leases of premises, purchase of materials, loss of sources of supply, replacement of items at higher prices, forfeiture of leases, forfeiture of machinery contracts, loss of salesmen and executives, and the other items of irreparable loss, damage and injury, including the destruction of the good will of the respective businesses of said Members, as above set forth.

"(17) That in pursuance of such conspiracy, all of the said defendants above named, and the unnamed defendants hereinabove described, conspiring with and aiding them, did, on or about the 1st day of February, 1935, demand of each of said Members of plaintiff corporation that each of said Members sign certain

agreements with said defendants, to the effect, among other things, that employers should hire none but members of the said International Ladies' Garment Workers Union and of the said Cotton Goods Workers Union, Local No. 76, and that said defendants demanded that said Members operate their businesses respectively, upon the 'closed shop basis', and that said defendants stated to said Members that if said Members, or any of them, refused the said demands and refused to sign such an agreement, that a strike would be called upon said Members by said Unions and by said defendants, and that such a strike would be carried on in a manner that would force said Members and each of them, to either sign said agreement or cease business; that said members, and each of them, refused to execute such agreements.''

The bill then alleges that *in pursuance of the said conspiracy* defendants, and others acting with them, thereupon attempted to cause strikes to be called in the plants of said members, and by intimidation, violence, etc., attempted to compel and induce ''all of the employees of said Members, respectively, to quit their work . . . ''; that defendants committed various acts of intimidation, threats of violence and picketing of the respective places of business of said members and have threatened employees of the respective members with bodily harm if they continue to work in said plants; that on February 21, 1935, the defendants ''did, at the various plants and places of business of the members of plaintiff corporation, attack, assault and beat many of the employees of said members,'' and have by such means caused said employees to be fearful of their positions and of their physical well being; that plaintiff is informed and believes that defendants will continue the said threats and acts of violence, etc., *''so that the respective businesses of the members of plaintiff will be destroyed* unless the same is prevented

by this Honorable Court''; that none of the employees of said members desire to quit their employment or to join said unions. The bill then alleges that complainant "and its members" have no adequate remedy at law, that defendants are financially irresponsible, *and that each of said members would be irreparably injured* unless defendants are enjoined from carrying out the alleged conspiracy;

"35. That the defendants engaged in the conspiracy above described against each of the Members of plaintiff corporation, are the same; that the conspiracy planned against each of the Members of plaintiff is the same; that the means adopted and the personnel used in carrying such conspiracy into effect is the same against each of said Members; that the situation of each of said Members is practically identical, and that therefore said Members of plaintiff have a common interest in the subject matter of this Complaint, which is filed in order to avoid a multiplicity of suits.

"36. That plaintiff brings this action on behalf of itself and of all its Members, and also on behalf of all persons who are similarly situated, who may care to join in these proceedings and bear their pro rata share of the expense and fees involved herein."

The bill prays that defendants be enjoined:

"(1) From in any manner interfering with, hindering or stopping the business of plaintiff or its members, or any of them, or of their respective agents or employees in the operation of the business of said Members, for the purpose of injuring plaintiff and its Members.

"(2) From requesting, soliciting, inducing or compelling by threats, promises, or otherwise, any of the employees of the Members of plaintiff to cease or refuse to work in the normal and usual way.

"(3) From picketing or maintaining more than one picket at or near the premises of each of said

Members or along the methods followed by the employees of said Members in going to and from their homes and to and from the places of business of said Members.

"(4) From watching or spying upon the places of business of said Members and upon the respective employees of said Members, and from watching or spying upon those who enter or leave said places of business, or who seek to enter the employment of said Members.

"(5) From intimidating by threats or otherwise the employees of said Members or any persons who may become or seek to become employees of said Members.

"(6) From congregating about, patrolling and/or from gathering in groups upon the grounds at or near the places of business of said Members of Plaintiff, or where the employees of said Members are living, lodging or boarding, for the purpose of compelling, inducing or soliciting the said employees to leave their employment, and/or for the purpose of preventing or attempting to prevent persons from entering into the employment of said Members and from transacting business with said Members.

"(7) From entering upon the premises, hallways, or stairways, grounds or places where the employees of said Members are at work for the purpose or with the effect of hindering, interfering with, or obstructing the businesses of such employees or of said Members.

"(8) From interfering with or attempting to hinder said Members from carrying out their business in the usual or ordinary way.

"(9) From following the employees of said Members to their homes or to other places and from visiting or calling upon such employees for the purpose or with the effect of inducing them to leave the employment of said Members, or for the purpose or with the effect of molesting or intimidating such employees.

"(10) From compelling or inducing or attempting to compel and induce any of the employees of such Members to refuse or fail to do their work or perform their duties as such employees.

"(11) From doing anything which subjects any of the said employees to hatred, criticism, censure, scorn, disgrace or annoyance, because of their employment by said Members.

"(12) From committing or attempting to commit any acts of violence, assaults, or other acts tending to produce violence upon any of the employees of said Members."

The preliminary injunction followed, in substance, the prayer of the bill save that it provided "that the pickets shall be permitted in ordinary tone of conversation and voice to peaceably persuade those persons employed by said members to refrain from work, provided that such persuasion be unaccompanied by any threats of violence or intimidation in any form or manner whatsoever," and that defendants might visit the employees of said members at their homes in order to induce them to leave the employment of said members. The order provided that complainant should file a bond in the sum of $500.

Upon the oral argument in this court counsel for complainant stated that complainant was willing to have the appeal determined upon the assumption that the order appealed from was entered upon the bill and without notice. Counsel for defendants stated that they were willing to waive all of the grounds urged in their brief for reversal of the order save one, viz., "want of proper party plaintiff."

Defendants contend that this "is a suit between the Manufacturers Association, an association not for profit, having no controversy with the employees, unauthorized to act for anyone excepting itself, and said association, by itself, having no property interest to conserve and no other interest of its own that is

threatened by the acts complained of, the bill in its entirety saying that all of the acts complained of are acts which could only affect the employers who happened to be members of the plaintiff association. That the association as such has no interest of its own which is either injured or threatened to be injured; . . . that there is a want of party plaintiff in this case who would be entitled to the relief prayed for, that is to say, that the members, each of whom, or all of whom, might have properly prayed for the relief were either unwilling to ask for such relief or did not need such relief. The party praying for the same being a mere volunteer undertaking to act for others without authority.''

The bill states that it is brought for the relief of the 14 firms and ''all persons who are similarly situated, who may care to join in these proceedings and bear their pro rata share of the expense and fees involved herein.'' It charges, in substance, that defendants entered into an unlawful conspiracy, involving force and violence, with the intent, purpose and design to destroy the business of each of the 14 firms, all of whom are members of complainant corporation, and to cause each of said members irreparable loss, damage, injury and expense. The various acts alleged to have been committed in furtherance of the conspiracy related only to the businesses of the said firms. The injunction prayed for and the injunctional order entered relate only to such businesses. The bill does not allege that any act of injury or damage to complainant was committed or threatened, nor that any pecuniary loss or injury was suffered by it or threatened to it by any of the alleged wrongful acts of defendants. The relief sought, if granted, would not benefit complainant.

There are certain settled rules of law that govern a case like the instant one. It is only upon the ground of injury to property rights that the jurisdiction of

equity to interfere by injunction rests. Equity has no jurisdiction in matters criminal or immoral and will not interfere merely to prevent violations of law, but if there are interferences, actual or threatened, with property or rights of a pecuniary nature that threaten an irreparable injury to the property of a complainant, the fact that the acts complained of are violations of the criminal law will not destroy the jurisdiction of a court of equity. It is fundamental law that in all equity cases the bill must show that the complainant has an interest in the subject matter of the suit. It must show the rights of the complainant, by whom and in what manner he is injured, and in what he desires the assistance of the court.

In the well known case of *McCabe v. Atchison, T. & S. F. Ry. Co.*, 235 U. S. 151, it appeared that Oklahoma had enacted what was known as the Oklahoma Separate Coach Law, which provided that every railway company doing business in the State as a common carrier of passengers for hire should provide separate coaches or compartments for the accommodation of the white and negro races, which should be equal in all points of comfort and convenience, and that at passenger depots there should be maintained separate waiting rooms, likewise with equal facilities, etc. McCabe and four other negroes brought suit against the railroad company to enjoin compliance with the provisions of the statute, because, among other reasons, it violated the Fourteenth Amendment to the federal constitution. The Supreme Court, after stating that certain sections of the act were in contravention of that amendment, held that an injunction could not be granted, for the following reason:

"There is, however, an insuperable obstacle to the granting of the relief sought by this bill. It was filed, as we have seen, by five persons against five railroad corporations to restrain them from complying with

the state statute. The suit had been brought before the law went into effect and this amended bill was filed very shortly after. It contains some general allegations as to discriminations in the supply of facilities and as to the hardships which will ensue. It states that there will be 'a multiplicity of suits,' there being at least 'fifty thousand persons of the negro race in the State of Oklahoma' who will be injured and deprived of their civil rights. But we are dealing here with the case of the complainants, and nothing is shown to entitle them to an injunction. It is an elementary principle that, in order to justify the granting of this extraordinary relief, the complainant's need of it, and the absence of an adequate remedy at law, must clearly appear. The complainant cannot succeed because someone else may be hurt. Nor does it make any difference that other persons, who may be injured are persons of the same race or occupation. *It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention. Williams v. Hagood,* 98 U. S. 72, 74, 75; *Virginia Coupon Cases,* 114 U. S. 325, 328, 329; *Tyler v. Judges,* 179 U. S. 405, 406; *Turpin v. Lemon,* 187 U. S. 51, 60; *Davis & Farnum v. Los Angeles,* 189 U. S. 207, 220; *Hooker v. Burr,* 194 U. S. 415, 419; *Braxton County Court v. West Virginia,* 208 U. S. 192, 197; *Collins v. Texas,* 223 U. S. 288, 295, 296.'' (Italics ours.)

''Where the record shows that none of the plaintiffs of record have any right to relief, the court cannot grant relief to those unnamed persons on whose behalf it is claimed the suit is brought.'' (21 C. J. 667.) To the same effect is *Watson v. National Life & Trust Co.,* 189 Fed. 872. In *Boyer v. Western Union Tel. Co.,* 124 Fed. 246, the court held that ''the bill is without equity as to the complainants named, and it is useless, therefore, to discuss their right, under the allegations of the bill, to represent other persons.''

"To authorize an injunction there should not only be a clear and palpable violation of the rights of the complainants, but it should also appear clearly that there is a substantial injury by reason of such violation. *Springer v. Walters,* 139 Ill. 419; *Dunn v. Youmans,* 224 id. 34." (*Girard v. Lehigh Stone Co.,* 280 Ill. 479, 485.)

It is indispensable that a complainant, at the time of the filing of a bill for an injunction, be in such a position that he could be injured by the acts complained of. (*Shonk Tin Printing Co. v. Shonk,* 138 Ill. 34; *Allott v. American Strawboard Co.,* 237 Ill. 55, 62.) It is a general rule in all chancery proceedings that suits should be conducted in the name of the real parties in interest (*Mansfield v. Hoagland,* 46 Ill. 359; *Cameron v. Boeger,* 102 Ill. App. 549); that unless a complainant has some interest in the property in controversy, his bill cannot be maintained (*Smith v. Hollenback,* 46 Ill. 252; *Buchter v. Dew,* 39 Ill. 40); that equity will not extend relief to one where it appears that the action is not brought in good faith for the protection of his own interests but that he is merely a colorable complainant suing in behalf of other parties in interest. (*Stubbs v. City of Aurora,* 160 Ill. App. 351, 363, and authorities cited therein.) In *McGovern v. McGovern,* 268 Ill. 135, the court, in holding that the complainant in a proceeding in equity must show an actual, existing interest in the subject matter of the suit, said:

"Objections that the plaintiff has no interest in a suit, if the defect appears on the face of the bill, should be regularly taken by demurrer or motion to dismiss, and if not patent on the face of the bill, then by plea or answer. If the plaintiff's interest is indispensable to a decision of the matter in dispute on the merits, the courts, will, on their own motion, take notice of the want of such interest. (*Prentice v. Kimball,* 19 Ill.

320; *Gerard v. Bates,* 124 id. 150; *Conway v. Sexton,* 243 id. 59, and cases cited; Story's Eq. Pl.—10th ed.— sec. 236; 16 Cyc. 204.) Such lack of interest is fatal, and the objection on that account may be taken on demurrer or at the hearing. (*Haskell v. Hilton,* 30 Me. 419; *Harrison v. McMennomy,* 2 Edw. Ch. 251; Story's Eq. Pl.—10th ed.—sec. 508, and note.) Under the reasoning of the authorities already cited, the lack of interest of appellants in the lands alleged to have been conveyed by the deeds, as shown on this record, could be raised at any time before the final decree by the court itself. See, also, as bearing on this point, *Herrington v. Hubbard,* 1 Scam. 569, *Hickox v. Frank,* 102 Ill. 660, and *Abernathie v. Rich,* 229 id. 412.''

''It is scarcely necessary to reiterate the rule in chancery pleading and practice, that all persons who are legally or equitably interested in the subject matter and result of the suit must be made parties. *American Bible Society et al. v. Price,* 115 Ill. 623; Story's Eq. Pl. secs. 141, 145, 150.'' (*Green v. Grant,* 143 Ill. 61, 69.)

In the instant case the real parties affected by the alleged conspiracy were not made complainants nor parties. It requires no authorities to support the settled rule that in injunction proceedings the complainant must be threatened with irreparable damage to entitle him to relief.

Complainant's contention that it is a legal entity is not questioned. Its major contention is that its charter provides that it is organized ''to further, encourage, aid and promote the general welfare of its members,'' and that ''this action was brought primarily and solely for the purpose of encouraging, aiding and promoting the general welfare of the members of the plaintiff corporation,'' and that complainant, therefore, is a proper party to bring the instant suit. In

support of its position plaintiff cites the following cases: *United Cloak, etc., Mutual Aid Ass'n v. Sigman*, 218 N. Y. S. 483; *Master Horseshoers' Protective Ass'n v. Quinlivan*, 82 N. Y. S. 288; *Mayes v. United Garment Workers*, 320 Mo. 10; *Carpenters' Union v. Citizens Committee,* 333 Ill. 225. In the *United Cloak* case plaintiff was a membership corporation, composed of cloak and suit designers organized for mutual aid, and the bill alleged that defendants and members of the organizations made defendants "*conspired to destroy the plaintiff corporation* by force, threats, intimidation, and other unlawful means, and that, by means of violence, threats, and intimidation, they seek to induce members of the plaintiff organization to violate contracts with various employers to render services as designers; . . . that the defendants and the members of the defendant unions *have combined and conspired to destroy the plaintiff association, and prevent the same from continuing as such,* by force, violence, and intimidation . . . ." The plaintiff prayed "that the defendants be enjoined from impeding, obstructing, hampering, or interfering with the continuance *of the plaintiff organization.*" In the *Master Horseshoers' Protective Ass'n* case the court divided upon the question before it, two justices concurring in the opinion filed and two dissenting. The majority held that an action might be maintained by the incorporated association of master mechanics against a voluntary association of their journeymen to enjoin the latter, acting in either its corporate capacity or through its individual members, from committing acts of violence against members of plaintiff association or their employees, or interfering by violence with plaintiff's property. From the opinion of the majority it appears that the bill alleged, *inter alia:*

". . . that the plaintiff and its members have for many years employed in the boroughs of Manhattan

and the Bronx in the city of New York a stamp or trade-mark which consists of a mark representing a horseshoe inserted between the letters N and A, which by its constitution and by-laws its members are required to affix to each horseshoe fitted by them, and that the right to use such trade-mark is a valuable property right belonging to the plaintiff; *that the strike ordered by the defendant association is to impair, diminish, or destroy the value of such stamp, and the plaintiff's property rights therein;* and, on information and belief, that since the commencement of such strike the defendant maliciously, and with intent to injure and destroy the plaintiff and its property rights, and to impair its membership by compelling them to close their shops and seek other lines of business, has committed, and is now engaged in committing, and intends to continue to commit, acts of violence against the plaintiff, its members, and their employes. Certain specific acts are then alleged, in which the time and place are stated where plaintiff's members and persons employed by them have been assaulted and brutally beaten by members of the defendant, and property of some of the plaintiffs interfered with or destroyed; and that persons in the employ of the plaintiff's members have been threatened with personal violence if they continued in such employment. The complaint further sets out *that each and all of the acts of violence and intimidations stated have been and are committed and done in furtherance of the wrong and unlawful purpose of the defendant association, acting through its members, to injure plaintiff, and force it to accede to the demands of the defendant association;* that the defendant threatens and intends to continue its acts of said violence and intimidation unless restrained. The judgment demanded, among other things, is that the defendant be enjoined from resorting to any species of personal vio-

lence upon any member of the plaintiff or workmen employed by any member of it, or resorting to any species of threats, intimidations, force, or fraud against any of its members or interfering by violence with any of the property of the plaintiff or its members in violation of law." (Italics ours.)

The majority opinion emphasizes the fact that the bill alleges that plaintiff organization had certain property rights, viz., a trade-mark, and it assumes, apparently, that the theory of the bill was that the defendants were resorting to physical force against the members of the association and their employees for the purpose of destroying the plaintiff by impairing its membership and injuring it in its property rights. In other words, it regarded the alleged acts of violence against the members and their employees as a part of a general conspiracy against the plaintiff organization. We think the able minority opinion correctly states the law bearing upon the question before the court, and it is particularly applicable to the question before us. We therefore quote it in full:

"Ingraham, J. Assuming that the individual members of the plaintiff corporation would be justified in applying to the court to restrain the violence and intimidation resorted to by the members of the defendant association—a proposition to which I do not dissent—I am unable to see how the plaintiff is justified in asking the court to interfere in its behalf. The plaintiff, a membership corporation, has a personality entirely distinct from that of its individual members. It is a corporation capable of suing and being sued, of holding property, and protecting its property rights and interests. If this defendant, or the members of the association of which the defendant is president, had interfered with the property of the plaintiff, or were guilty of any unlawful act against the corporation which caused it damage, a different question would be presented; but I fail to find any facts al-

leged which would justify this conclusion. The plaintiff alleges that it is the owner of a trade-mark, which is a valuable property right, but there is no allegation that the defendant or the association that he represents has done any act that tended to injure the plaintiff's trade-mark. The fact that the defendant and the members of the association insisted that upon goods manufactured by the members of the defendant association should be impressed a mark showing that they were so manufactured did not tend to injure the plaintiff's trade-mark. There is no allegation that the defendant refused to allow the plaintiff's trade-mark being also impressed upon the horseshoes manufactured by the members of the plaintiff corporation; and this is the only property, so far as appears, that the plaintiff has, and nothing was done that would injure that property. The strike was not against the plaintiff corporation. Certain employes of members of the plaintiff corporation had struck, and refused to continue to work for their employers unless their demands were acceded to; and to enforce that demand violence was resorted to, which was clearly illegal; but the injury that resulted was injury to the individual members of the plaintiff corporation, and not to the corporation itself. There was no demand that the defendant's employers should withdraw from the corporation, and nothing that could possibly affect the plaintiff's property. The right to use its stamp or trade-mark not being involved, and the plaintiff corporation having no authority to commence an action to protect its members, I can see no ground upon which this action can be maintained. The injury that was sustained by the unlawful acts of the defendants affected the individual members of the plaintiff corporation. If there had been a trespass upon the individual property of a member of the plaintiff corporation, which had caused injury, that individual could maintain action against the wrongdoer; or, if the

property of an individual member of the plaintiff corporation had been converted, such individual member could have maintained an action for such conversion. But it could hardly be claimed in such a case that the plaintiff corporation could recover for the damages sustained by such unlawful acts affecting its individual members. The liability of a corporation for the acts of its officers and agents who resort to violence or fraud for the purpose of carrying out the objects for which the corporation was organized is entirely distinct from the right of such a corporation to recover the damages sustained by its individual members in consequence of the unlawful acts of others. The basis upon which injunctions have been granted in actions of this kind is that the property of the plaintiff has been affected by violence or fraud, or the individual right of either a person or a corporation to transact its ordinary business has been illegally interfered with by one or more persons against whom relief is asked. *Buffalo Lubricating Oil Co. v. Standard Oil Co.*, 106 N. Y. 669, 12 N. E. 826, was an action to recover the damages sustained by the plaintiff, not the damages sustained by others. In *Curran v. Galen*, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496, the court sustained an action for damages against the defendants for having confederated and conspired together to injure the plaintiff by taking away his means of earning a livelihood and preventing him from obtaining employment; but it was an injury to the individual right of the plaintiff that was sought to be redressed. The relief that is asked for in this action is to restrain the defendants from interfering in any manner with the objects of the plaintiff and the business of the plaintiff's members, and the workmen employed by such members from resorting to any species of personal violence upon any member of the plaintiff or workmen employed by any member;

from resorting to any species of threats, intimidation, force or fraud against the plaintiff or its members, or the workmen employed by its members for the purpose of accomplishing the withdrawal of such workmen from the employment of plaintiff's members; or from interfering by any other means in violation of law with the property and property rights of the plaintiff and its members. For relief to protect the members of the plaintiff corporation, the members must bring the action, and I can find no evidence in the record that the members of the defendant association interfered in any way with the plaintiff corporation, or affected its property rights or interests, which would justify the corporation in maintaining an action either to recover damages for the unlawful acts complained of or to restrain the continuance of such unlawful acts.

"For this reason I think the court below correctly refused to grant an injunction, and that the order appealed from should be affirmed, with $10 costs and disbursements.

"Van Brunt, P. J., concurs."

We are in entire accord with the reasoning and conclusion of the minority opinion. In the *Mayes* case, cited by complainant, the court was called upon to determine the question as to whether or not the defendants' plea in abatement was good. In *Carpenters' Union v. Citizens Committee* a bill was filed by certain members of the United Brotherhood of Carpenters and Joiners of America, a voluntary, unincorporated association, in behalf of themselves and of all other members of the Brotherhood in Cook and Lake counties, Illinois, who exceed 20,000 and belong to 36 subdivisions of the Brotherhood called local unions, against the Citizens' Committee to Enforce the Landis Award, a corporation not for profit. As we read the opinion in that case it is an authority against com-

plainant's position. There the defendants contended that none of the complainants was entitled to any relief and the court answered the contention by showing that all of the complainants were entitled to relief as they were directly affected by the illegal conduct of defendants; that "the acts of the defendants were directed against the union as a body and all the original members."

We hold that under the allegations of the bill complainant corporation is not entitled to maintain this action. Indeed, for aught that appears in the bill complainant is a mere volunteer, having no remedial interest in the subject matter of the suit. It is the party that is threatened with irreparable injury that has the right to ask for an injunction.

The preliminary injunctional order entered by the superior court of Cook county on February 23, 1935, is reversed.

*Preliminary injunctional order entered February 23, 1935, reversed.*

Friend, P. J., and Sullivan, J., concur.